UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA SANDERS and ANTHONY WILSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE CJS SOLUTIONS GROUP, LLC d/b/a THE HCI GROUP <br><br> Defendant. | Civil Action No. 17-3809 <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Patricia Sanders ("Sanders") and Anthony Wilson ("Wilson") (collectively "Plaintiffs") through their undersigned counsel, individually and on behalf of all others similarly situated, file this Collective and Class Action Complaint against Defendant The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York state law. Plaintiffs allege that they and other similarly situated consultants were improperly classified as independent contractors, and, as a result, did not receive overtime pay for hours worked in excess of forty (40) in a workweek. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

**JURISDICTION AND VENUE**

1. Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiffs' New York state

1

law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, since a substantial part of the events giving rise to Plaintiffs' claims occurred within this District, and HCI conducts business in this judicial District. Specifically, Plaintiff Sanders performed work for HCI at Montefiore Medical Center in Yonkers, New York and the Hospital for Special Surgery in Manhattan, New York. Plaintiff Wilson performed work for HCI at Montefiore Medical Center in The Bronx, New York.

## PARTIES

3. Plaintiff Patricia Sanders is an individual residing in La Palma, California. Sanders worked for Defendant as a Consultant providing support and training in using a new recordkeeping system to HCI's clients at Montefiore Medical Center in Yonkers, New York; Hospital for Special Surgery in Manhattan, New York; New York City Health and Hospital Corporation in Queens, New York; High Point Hospital in High Point, North Carolina and Pardee Hospital in Hendersonville, North Carolina at various times between July 2016 and July 2017. Pursuant to 29 U.S.C. § 216(b), Sanders has consented in writing to participate in this action. *See* Exhibit A.

4. Plaintiff Anthony Wilson is an individual residing in Indianapolis, Indiana. Wilson worked for Defendant as a Consultant providing support and training in using a new recordkeeping system to HCI's clients at Montefiore Medical Center in Bronx, New York, in October 2015 and January 2016, and at University of Maryland in Baltimore, Maryland, in November 2016. Pursuant to 29 U.S.C. § 216(b), Wilson has consented in writing to participate in this action. *See* Exhibit B.

5. Defendant The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") is a corporation providing information technology educational services for the healthcare industry across the country. HCI maintains its corporate headquarters in Jacksonville, Florida and is incorporated in Florida.

6. HCI employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

7. HCI's annual gross volume of sales made or business done exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

8. Plaintiffs bring Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following class of potential FLSA opt-in litigants:

> All individuals who were classified as independent contractors while performing consulting work for The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") in the United States, from May 19, 2014 to the present.
>
> All persons who were classified as independent contractors while performing consulting work for Defendant HCI within the State of Washington are excluded from the collective.[1]

9. Plaintiffs bring Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and the following class:

> All individuals who were classified as independent contractors while performing consulting work for The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI") in the state of New York from May 19, 2011 to the present.

---

[1] A case pending in Washington State Court, *Garrett v. The CJS Solutions Group LLC*, No. 17-2-10799-9 SEA (King County Super. Ct.) encompasses wage and hour claims for individuals who performed work for HCI within the state of Washington. These individuals are therefore excluded from the Section 216(b) collective definition in the instant action.

10. The FLSA Collective and the New York Class are together referred to as the "Classes."

11. Plaintiffs reserve the right to re-define the Classes prior to notice or class certification, and thereafter, as necessary.

**FACTS**

12. As a leading healthcare information technology firm, HCI provides training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems. HCI employs consultants, such as Plaintiffs, who perform such training and support services throughout the United States.

13. HCI's financial results are significantly driven by the number of consultants providing training and support services for HCI's customers and the fees that HCI charges the customers for these services.

14. Between approximately July 2016 and July 2017, Sanders worked as a consultant for HCI and was assigned to work at Montefiore Medical Center in Yonkers, New York and the Hospital for Special Surgery in Manhattan, New York, which are located within this judicial district, as well as New York City Health and Hospital Corporation in Queens, New York; High Point Hospital in High Point, North Carolina and Pardee Hospital in Hendersonville, North Carolina.

15. In October 2015 and January 2016, Wilson worked as a consultant for HCI and was assigned to work at Montefiore Hospital in Bronx, NY, located within this judicial district. Wilson also worked as a consultant for HCI at University of Maryland in Baltimore, Maryland, in November 2015.

16. Plaintiffs were paid solely on an hourly basis and were paid only for the time they actually worked.

17. HCI improperly, wrongfully and illegally classified Plaintiffs and Class Members as independent contractors, when the economic reality of their position is that of an employee, and HCI retains the right of control, and, in fact, actually does control their work.

**Plaintiffs are Employees as a Matter of Economic Reality**

18. The Department of Labor's Wage and Hour Division ("WHD") Administrator's Interpretation No. 2015-1 provides "guidance regarding the application of the standards for determining who is an employee under the Fair Labor Standards Act [FLSA] ... to the regulated community in classifying workers and ultimately in curtailing misclassification." U.S. Dep't of Labor, Wage & Hour Div., Admin.'s Interpretation No. 2015-1, 1 (July 15, 2015). According to the WHD, "most workers are employees under the FLSA's broad definitions." *Id.* Plaintiffs and Class Members qualify as employees under the FLSA's test, as further described below.

19. Work performed by Plaintiffs and Class Members is an integral part of HCI's business. HCI is in the business of providing information technology educational services to the healthcare industry. Plaintiffs and Class Members provide support and training to HCI's clients in connection with the implementation of electronic recordkeeping systems.

20. Plaintiffs' and Class Members' duties do not involve managerial work. They follow the training provided to them by HCI in performing their work, which is basic training and support in using electronic recordkeeping systems.

21. Plaintiffs' and Class Members do not make any significant relative investments in relation to their work with HCI. HCI provides the training and equipment required to perform the functions of their work.

22. Plaintiffs and the Class Members have little or no opportunity to experience a profit or loss related to their employment. HCI pays Plaintiffs and the Class Members a fixed hourly rate. Plaintiffs and the Class Members do not share in HCI's monetary success; their income from their work is limited to their hourly rate.

23. Plaintiffs' and Class Members' work does not require special skills, judgment or initiative. HCI provides training to Plaintiffs and Class Members, which they use to provide training and support to HCI's clients.

24. Plaintiffs and Class Members are economically dependent on HCI. Plaintiffs and Class Members are entirely dependent upon HCI for their business, as they are not permitted to perform services for any other company during their time working for HCI.

25. Plaintiffs and Class Members are not customarily engaged in an independently established trade, occupation, profession or business.

26. Plaintiffs and Class Members typically enter into successive projects for HCI. For example, Sanders worked on five successive projects for HCI.

27. Plaintiffs and Class Members have little or no authority to refuse or negotiate HCI's rules and policies; they must comply or risk discipline and/or termination.

28. HCI instructs Plaintiffs and Class Members concerning how to do their work and HCI dictates the details of the performance of their jobs. For example:

    a. HCI, not Plaintiffs or Class Members, conducts all of the billing and invoicing to HCI's clients for the work. HCI bills the third-party customers directly;

    b. Plaintiffs and Class Members have no control over what prices to charge, or the scheduling of shifts. All negotiations over the cost of the work are done directly between HCI and the third-party client;

c. HCI requires Plaintiffs and Class Members to work the entire project from inception to conclusion;

d. HCI provides all training needed for Plaintiffs and Class Members to perform their work; and

e. HCI requires Plaintiffs and Class Members to perform in accordance with HCI's policies, manuals, standard operating procedures and the third-party client's requirements.

29. Plaintiffs and Class Members often work approximately twelve (12) hours per day, seven (7) days per week.

30. Plaintiff and Class Members have to request HCI's approval for time off. HCI has the discretion to grant or deny such requests.

**Plaintiffs are not Exempt as "Computer Employees" under the FLSA**

31. Plaintiffs and Class Members provide support and training to hospital staff in connection with electronic recordkeeping systems. Plaintiffs have no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs. For example, Plaintiff Sanders has a background as a respiratory therapist. Plaintiffs and Class Members were not working as, nor were they similarly skilled as, computer systems analysts, computer programmers or software engineers, as defined in 29 C.F.R. § 541.400(a).

32. Plaintiffs' and Class Members' primary duties consisted of training and aiding healthcare staff with using new electronic recordkeeping software. This support is also known as "at the elbow". Plaintiffs' and Class Members' primary duties did not include the higher skills of "application of systems analysis techniques and procedures" pursuant to 29 C.F.R. §

541.400(b)(1). Plaintiffs and Class Members did not analyze, consult or determine hardware, software programs or any system functional specifications for HCI's clients. *See id.*

33. Plaintiffs and Class Members did not consult with HCI customers to determine or recommend hardware specifications. Plaintiffs and Class Members did not design, develop, document, analyze, create, test or modify a computer system or program as defined in 29 C.F.R. § 541.400(b)(2).

34. While Plaintiffs' and Class Members' "work was highly dependent upon, or facilitated by, the use of computers and computer software programs;" they were not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiffs and Class Members provided support and training to HCI's clients in using electronic recordkeeping systems.

**Plaintiffs and Class Members Routinely Worked in Excess of Forty Hours a Week**

35. Plaintiffs and Class Members are regularly required to work 12-hour shifts, 7 days a week, while performing work for HCI.

36. For example, while working at the Hospital for Special Surgery in January 2016, Sanders worked 12 hours a day, 7 days a week. Between 60 and 100 other HCI consultants were assigned to this project, and followed a similar schedule.

37. Similarly, while working at Montefiore Hospital in The Bronx in October 2015, Wilson worked 12-hour shifts, 7 days a week. Approximately 60 other HCI consultants were assigned to this project, and followed a similar schedule.

38. Although Plaintiffs and Class Members are routinely required to work more than forty (40) hours per week, they do not receive one and one-half (1 ½) times their regular rate for

hours worked in excess of forty (40) hours per week, as required by the FLSA and the New York Labor Law.

39. Instead, Plaintiff and Class Members are paid a straight hourly rate for hours that they work, regardless of whether they work more than forty hours in a week.

**HCI Willfully Violated the FLSA**

40. HCI and its senior management had no reasonable basis to believe that Plaintiffs and the members of the FLSA Class were exempt from the requirements of the FLSA. Rather, HCI either knew or acted with reckless disregard of clearly applicable FLSA provisions in failing to pay overtime to Plaintiffs and the FLSA Class. Such willfulness is demonstrated by, or may be reasonably inferred from, HCI's actions and/or failures to act, including the following:

    a. At all times relevant hereto, HCI maintained payroll records which reflected the fact that Plaintiffs and the FLSA Class did, in fact, regularly work in excess of 40 hours per week, and thus, HCI had actual knowledge that Plaintiffs and the FLSA Class worked overtime;

    b. At all times relevant hereto, HCI knew that it did not pay Plaintiffs and the FLSA Class one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

    c. As evidenced by its own job offer letters, independent contractor agreements, employment agreements, and training materials for consultants, at all times relevant hereto, HCI was aware of the nature of the work performed by its consultants, and, in particular, that these individuals worked exclusively at-the-elbow of healthcare workers employed by HCI's clients, providing basic training and support;

9

d. As evidenced by its own job offer letters, employment agreements, and training materials for consultants, HCI knew and understood that it was subject to the wage requirements of the FLSA as an "employer" under 29 U.S.C. § 203(d).

e. At all times relevant hereto, HCI was aware that its consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1); or (iii) the design, development, analysis, creation, testing or modification of a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2);

f. HCI lacked any reasonable or good faith basis to believe that its consultants fell within any exemption from the overtime requirements of the FLSA. Rather, HCI deliberately misclassified its consultants as independent contractors in order to avoid paying them overtime compensation to which they were entitled;

g. At all times relevant hereto, HCI was aware that it would (and, in fact did) benefit financially by failing to pay Plaintiffs and the FLSA Class one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week; and

h. Thus, HCI had (and has) a strong financial motive to violate the requirements of the FLSA by misclassifying its consultants as independent contractors.

41. Based upon the foregoing, HCI was cognizant that, or recklessly disregarded whether, its conduct violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

42. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the class defined above.

43. Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

44. Plaintiffs and the FLSA Class Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to HCI's previously described common business and compensation practices as described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, HCI's common misclassification, compensation and payroll practices.

45. Specifically, HCI misclassified Plaintiffs and FLSA Class Members as independent contractors and paid them a set hourly rate.

46. The similarly situated employees are known to HCI, are readily identifiable, and can easily be located through HCI's business and human resources records.

47. HCI employs many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the New York Class, as defined above.

49. The members of the New York Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the New York Class.

50. Plaintiffs will fairly and adequately represent and protect the interests of the New York Class because there is no conflict between the claims of Plaintiffs and those of the New York Class, and Plaintiffs' claims are typical of the claims of the New York Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

51. There are questions of law and fact common to the proposed New York Class, which predominate over any questions affecting only individual Class Members, including, without limitation: whether Defendant has violated and continues to violate New York law through its policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

52. Plaintiffs' claims are typical of the claims of the New York Class in the following ways: (1) Plaintiffs are members of the New York Class; (2) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New York Class; (3) Plaintiffs' claims are based on the same legal and remedial theories as those of the New York Class and involve similar factual circumstances; (4) there are no conflicts between the interests of Plaintiffs and the New York Class Members; and (5) the injuries suffered by Plaintiffs are similar to the injuries suffered by the New York Class Members.

53. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only individual Class members.

54. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New York Class is readily identifiable from Defendant's own records. Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

55. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the New York Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendant. Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the New York Class. Plaintiffs envision no difficulty in the management of this action as a class action. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt out of it pursuant to Fed. R. Civ. P. 23(c)(2), for the purpose of adjudicating their claims for overtime compensation, double damages, interest, and attorneys' fees and costs under the New York Labor Law.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiffs and the FLSA Class Members)

56. All previous paragraphs are incorporated as though fully set forth herein.

57. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d).

58. HCI is subject to the wage requirements of the FLSA because HCI is an employer under 29 U.S.C. § 203(d).

59. During all relevant times, HCI has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

60. During all relevant times, Plaintiffs and the FLSA Class Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

61. Plaintiffs and the FLSA Class Members are not exempt from the requirements of the FLSA.

62. Plaintiffs and the FLSA Class Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

63. HCI, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the FLSA Class Members for all their overtime hours worked by misclassifying Plaintiffs and the FLSA Class as independent contractors, thereby exempting them from the requirements of the FLSA.

64. HCI knowingly failed to compensate Plaintiffs and the FLSA Class Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

65. In violating the FLSA, HCI acted willfully and with reckless disregard of clearly applicable FLSA provisions.

66. In violating the FLSA, on information and belief, HCI did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
## Violation of New York Minimum Wage Act
## (On Behalf of Plaintiffs and the New York Class)

67. All previous paragraphs are incorporated as though fully set forth herein.

68. Overtime compensation due to New York workers is governed by New York Labor Law ("NYLL"), N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

69. NYLL requires that non-resident employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

70. NYLL requires that resident employees be compensated for all hours worked in excess of forty-four (44) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

71. HCI is subject to the wage requirements of the NYLL because HCI is an "employer" under N.Y. LAB. LAW § 651(6).

72. During all relevant times, Plaintiffs and the New York Class are covered employees entitled to the above-described NYLL's protections. *See* N.Y. LAB. LAW § 651(5) and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.14.

73. Plaintiffs and the New York Class are not exempt from the requirements of the NYLL.

74. HCI is required by NYLL to pay Plaintiffs and the New York Class time and one-half (1 ½) the regular rate of pay for any work in excess of forty (40) hours for non-residents and forty-four (44) hours for residents pursuant to N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

75. HCI violated Plaintiffs' and the New York Class Members' rights by failing to pay them the legally required amount of overtime compensation at rates not less than one and one-half (1 ½) times the regular rate of pay their regular rate of pay to which they are entitled under N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

76. Specifically, HCI, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the New York Class for all their overtime hours worked by misclassifying Plaintiffs and the New York Class as employees exempt from the requirements of the NYLL.

77. In violating the NYLL, HCI acted willfully and with reckless disregard of clearly applicable NYLL provisions.

**JURY DEMAND**

Plaintiffs request a trial by jury on all of their claims.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs seek the following relief on behalf of themselves and the Classes:

    a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class Members;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the New York Class;

d. Back pay damages for unpaid overtime compensation and prejudgment interest to the fullest extent permitted under the law;

e. Liquidated and exemplary damages to the fullest extent permitted under the law;

f. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

g. Such other and further relief as this Court deems just and proper.

Dated: May 19, 2017

Respectfully submitted,

/s/Jill Kahn
Harold Lichten (Mass. BBO # 549689)*
Jill Kahn
Olena Savytska (Mass. BBO # 693324)*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
jkahn@llrlaw.com
osavytska@llrlaw.com

David M. Blanchard (MI P#67190)*
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com

Sarah R. Schalman-Bergen (PA 206211)*
Eric Lechtzin (PA 62096)*
Camille Fundora (PA 312533)*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
elechtzin@bm.net
cfundora@bm.net

*Attorneys for Plaintiff
and the Proposed Classes*

\* *Pro Hac Vice* anticipated