UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA SANDERS, ANTHONY
WILSON, JAIMEY GARRETT, and
DANOIS ALLEN, on behalf of themselves
and others similarly situated,

                    Plaintiffs,

       – against –

THE CJS SOLUTIONS GROUP, LLC d/b/a
THE HCI GROUP,

                    Defendant.

**<u>OPINION AND ORDER</u>**

17 Civ. 3809 (ER)

<u>Ramos, D.J.:</u>

     Plaintiffs Patricia Sanders, Anthony Wilson, Jaimey Garrett, and Danois Allen ("Named Plaintiffs") brought the above-captained action against Defendant The CJS Solutions Group, LLC ("Defendant" or "HCI") claiming violations of the Fair Labor Standards Act ("FLSA") and state wage and hour and unjust enrichment laws. *See* Compl., Doc. 1; First Amend. Compl. ("FAC"), Doc. 92.[1] Plaintiffs have submitted an unopposed motion for preliminary approval of the settlement agreement ("Settlement Mot."). Doc. 93. Plaintiffs further seek preliminary certification of a settlement class. *See id.* Plaintiffs' motion is DENIED without prejudice.

---

[1] Plaintiffs filed the FAC on January 16, 2018. Doc. 92. Under Federal Rule of Civil Procedure 15, if more than twenty-one days have passed since the answer was served, a party may only amend with the opposing party's written consent or with the court's leave. Fed. R. Civ. P. 15(a). Here, HCI's Answer was filed more than twenty-one days ago, on July 28, 2017. Doc. 49. However, the FAC states that it is filed "with the written consent of Defendant." *See* FAC at 2. Further, the FAC purports to consolidate this matter with *Allen v. The CJS Solutions Group, LLC d/b/a The HCI Group*, 17 Civ. 7085 (ER) (S.D.N.Y. 2017). Under Federal Rule of Civil Procedure 42, it is for the Court, not Plaintiffs, to determine that consolidation is appropriate. Construing the FAC and the unopposed Motion for Preliminary Approval of the Settlement Agreement as a joint application for consolidation, the Court will consolidate 17 Civ. 3809 and 17 Civ. 7085 as they present common questions of law and fact.

I.    **Background and Procedural History**

HCI is a leading healthcare information technology firm that provides training and support to medical facilities in connection with their transition to new electronic recordkeeping systems.  FAC ¶ 18.

Plaintiff Patricia Sanders ("Sanders") worked as a consultant for HCI at several hospitals and locations throughout 2016 and 2017:  she worked at Montefiore Medical Center, Hospital for Special Surgery, and New York City Health and Hospital Corporation in New York as well as High Point Hospital and Pardee Hospital in North Carolina.  *Id.* ¶ 4.  Plaintiff Anthony Wilson ("Wilson") worked as a consultant at Montefiore Medical Center in October 2015 and January 2016.  *Id.* ¶ 5.  Wilson also worked at the University of Maryland in November 2016.  *Id.* Plaintiff Jaimey Garrett ("Garrett") worked as an HCI consultant at the University of Washington Medical Center from May 2014 through October 2014.  *Id.* ¶ 6.  Garrett also worked for HCI in New York, Maryland, and Rhode Island between November 2014 and November 2015.  *Id.*  Plaintiff Danois Allen ("Allen") worked for HCI in 2016, consulting at at High Point Regional Medical Hospital and Caldwell Memorial Hospital in North Carolina as well as Queens Elmhurst Hospital in New York.  *Id.* ¶ 7.

Plaintiffs allege that they were classified by HCI as "independent contractors," when in reality they were employees.  *Id.* ¶ 25.  Plaintiffs allege that their consulting services were an "integral part" of HCI's business because Plaintiffs supported and trained HCI clients in connection with the implementation of electronic recordkeeping systems.  *Id.* ¶ 28.  Plaintiffs also allege that HCI instructed them on how to do their work and dictated the details of their job performance.  *Id.* ¶ 37.

Plaintiffs also alleged that they were "regularly" required to work twelve hour shifts for seven days a week while consulting for HCI. *Id.* ¶ 44. Sanders alleged that she and between sixty and one hundred other HCI consultants worked for twelve hours a day, seven days a week, while working at the Hospital for Special Surgery in January 2016. *Id.* ¶ 45. Wilson alleged that he and approximately sixty other HCI consultants worked the same schedule at Montefiore Hospital in October 2015. *Id.* ¶ 46. Plaintiffs were paid, however, on an hourly basis for the hours they worked and were not paid at an overtime rate for hours worked beyond a forty hour workweek. *Id.* ¶¶ 47–48.

Plaintiffs bring nine causes of action against Defendant. First, Plaintiffs, on behalf of a proposed FLSA collective action, allege that Defendant failed to pay overtime in violation of the FLSA. *Id.* ¶¶ 51, 96–100. Second, Plaintiffs, on behalf of a nationwide class, allege that Defendant was unjustly enriched by retaining the benefits of Plaintiffs' labor without paying overtime. *Id.* ¶¶ 103–04. Third, Plaintiffs Sanders and Wilson, on behalf of consultants who worked in New York, allege violations of New York Labor Law. *Id.* ¶¶ 110, 116–18. Additionally, Plaintiff Garrett, on behalf of consultants who worked in the state of Washington, brings five claims under Washington law: violations of the Washington Minimum Wage Act, *id.* ¶¶ 121, 126–28, failure to pay for rest breaks, *id.* ¶¶ 133–37, failure to provide meal periods, *id.* ¶¶ 143–47, unpaid wages on termination, *id.* ¶¶ 150–51, and willful refusal to pay wages, *id.* ¶¶ 154–56. Finally, Plaintiff Allen, on behalf of consultants who worked in North Carolina, brings a claim for violation of North Carolina wage and hour laws. *Id.* ¶¶ 160–62.

On May 19, 2017, Plaintiffs Sanders and Wilson filed this suit against HCI. Doc. 1. On July 26, 2017, the Court granted the parties' joint application and consolidated this matter with *Garrett v. The CJS Solutions Group, Inc.*, 17 Civ. 5493, a case brought by Plaintiff Garrett. Doc.

48.  On August 3, the Court granted a stay while the parties engaged in private mediation.  Doc. 55.  Prior to mediation, both parties engaged in discovery and prepared damages analyses.  *See* Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement ("Settlement Mem.") (Doc. 93-1), at 1.  The parties then met with mediator Ruth D. Raisfeld for a full day of mediation.  *Id.* at 2.  They have now reached a settlement and request that the Court:  (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the proposed settlement class under Rule 23 of the Federal Rules of Civil Procedure and the proposed collective action under § 216(b) of the FLSA;[2] (3) approved the Named Plaintiffs as the Settlement Class Representatives; (4) appoint Berger & Montague, P.C., Lichten & Liss-Riordan, P.C., and Blanchard & Walker PLLC as class counsel; (5) appoint JND Legal Administration as Settlement Administrator and preliminarily approve the costs of claims administration; and (6) approve the Settlement Notice and Claim Forms and the schedule for final approval of the settlement agreement.  Doc. 93.

## II.     Proposed Settlement Agreement

The Settlement Agreement reached by the parties provides that Defendants will pay up to $3,240,000.000 (the "Gross Settlement Amount") "in exchange for the release of the Named Plaintiffs' Released Claims and the Class Members' Released Claims."  Settlement Agreement (Doc. 93-2) at ¶ 14(n).

Before being distributed to Settlement Class Members, the Gross Settlement Amount will provide a service award of $10,000 to each Named Plaintiff.  *See id.* ¶ 33(a).  Class counsel will also receive a fee in an amount up to one-third of the Gross Settlement Amount (in other words,

---

[2] The "Settlement Class" is defined as Named Plaintiffs, Opt-in Plaintiffs, and "all individuals who worked as a Consultant for Defendant during any workweek between May 19, 2014 and May 31, 2017."  Settlement Agreement (Doc. 93-2) at ¶ 14(aa).  HCI represents that there are approximately 1,800 members of the Settlement Class.  *Id.*

up to $1,080,000.00) and will be reimbursed for costs, which are currently estimated to be $11,623.03.  *Id.* ¶¶ 33(b)(i); 14(r).  The Court will have the opportunity to approve the amount of fees and costs paid to class counsel, who will file a motion for approval of attorneys' fees and costs prior to the final settlement approval hearing.  Settlement Mem. at 26.  The Gross Settlement Amount will also be used to pay the costs of the settlement administrator.  Settlement Agreement ¶ 33(d).  Under the Agreement, those costs will not exceed $40,000.  *Id.* ¶ 14(r). From the remaining amount (the "Net Settlement Amount"), each eligible class member[3] will receive $250.  *Id.* ¶ 35(a).  Each eligible class member will also receive a *pro rata* share of the Net Settlement Amount based on the number of weeks he or she worked for HCI between May 19, 2014 and May 31, 2017.  *Id.* ¶ 35(b).

In exchange for this payment, settlement class members[4] will release HCI from liability for all claims that could have been asserted in the instant actions, including "any claims for unpaid wages, unpaid overtime wages, failure to pay other forms of compensation, failure to make timely wage payments, failure to provide meal and rest periods and/or to pay the meal and rest period premium."  *Id.* ¶ 19.  The Named Plaintiffs have agreed to a broader release, and will "generally release and discharge HCI . . . finally, forever and with prejudice, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses and issues of any kind or nature whatsoever, whether known or unknown, that Named Plaintiffs have or may have against HCI that arose prior to the date on which they execute this [Settlement] Agreement."  *Id.* ¶ 17.

---

[3] Eligible class members are Named Plaintiffs, Opt-in Plaintiffs, and settlement class members who timely return executed claim forms.  *Id.* ¶ 14(h).

[4] As discussed above, the settlement class is comprised of Named Plaintiffs, Opt-in Plaintiffs, and all individuals who worked as a consultant for HCI during any workweek between May 19, 2014 and May 31, 2017.  *Id.* ¶ 14(aa).

The Settlement Agreement provides that within fifteen days of the Court's preliminary approval, HCI will provide the settlement administrator with an electronic database identifying settlement class members, along with the total number of workweeks worked by each class member between May 19, 2014 and May 31, 2017. *Id.* ¶ 25(c). Within five days, the settlement administrator will mail and/or email the settlement notice to settlement class members. *Id.* ¶ 25(g). From that point, settlement class members will have sixty days until the notice deadline, by which time they must submit a claim form, mail a written objection to Defendant's and class counsel, or request to be excluded from the settlement. *Id.* ¶¶ 25(k), 26–27. The Settlement Agreement also provides for a final approval hearing before the Court, at least thirty days after the notice deadline. *Id.* ¶ 31.

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988)). "In evaluating the settlement, the Court 'should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . .'" *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., *Manual for Complex Litig.* § 30.42 at 240 (3d. ed. 1997)).

Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Settlement Class Members' input. Therefore, preliminary approval of a

settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 13.10 n.7.50 (5th ed. 2017). The fairness of a settlement turns on its terms as well as the negotiating process from which it emerged. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-Eastern R.R.*, 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the Court finds that it "appears to fall within the range of possible approval," the Court should order that the class members receive notice of the settlement. *See* Newberg § 13.10 n.10.

Here, the Court finds that probable cause does not exist to hold a full-scale hearing as to the fairness of the Settlement Agreement for two reasons. First, under *Cheeks*, this Court may not approve FLSA settlements containing an "overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotations omitted). "Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Martinez v. Gulluoglu LLC,* No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez v. Nights of Cabiria, LLC,* 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). This is especially true where "the releases were not mutual and protected only the defendants." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2

7

(S.D.N.Y. Feb. 3, 2016).  Even where releases affect only named plaintiffs, courts in this district have rejected overly broad releases as part of their duty to "police unequal bargaining power between employees and employers."  *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (quoting *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2730 (ANT), 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015)); *see also Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (denying preliminary approval of a settlement containing a nonmutual general release); *Thallapaka v. Sheridan Hotel Assocs., LLC*, No. 15 Civ. 5148867 (WHP), 2015 WL 5148867, at *1 (same).  Here, because the Named Plaintiff release is nonmutual and far exceeds the scope of the FLSA, this Court finds that it cannot preliminarily approve the Settlement Agreement.

Second, Plaintiffs argue that the Settlement Agreement is fair because the Gross Settlement Amount "represents almost 100% of unliquidated damages that would be owed if Plaintiffs prevailed on all of their claims."  Settlement Mem. at 10.  But the parties do not explain what the range of possible recovery for *any* Plaintiff is, nor do they attach any documentary evidence in support of their statement that $3 million is the highest recovery the settlement class could anticipate.   Other courts in this District have rejected settlements when the parties do not present sufficient information regarding the range of recovery, as "in the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable."  *See Nights of Cabiria*, 96 F. Supp. 3d at 177 (S.D.N.Y. 2015). Although the Gross Settlement Amount may be imminently reasonable, the Court cannot judge its fairness without more information on the Plaintiffs' possible recovery.  The Court must therefore deny Plaintiffs' motion for preliminary approval.

**III.      Conditional Certification of the Settlement Class and Collective Action**

Plaintiffs also seek conditional certification of a Rule 23(b) Class and an FLSA collective action for the purposes of facilitating a settlement.  Should the parties decide to amend the Settlement Agreement in light of the Court's discussion in Part II *supra*, class and collective action certification will likely be granted based on the information provided.

Under Rule 23 of the Federal Rules of Civil Procedure, a class action may proceed when: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)–(4).  Provisional class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating settlement, ensuring notification to class members of the proposed settlement agreement, and setting the date and time of the final approval hearing.  *See, e.g.*, *Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817 (CBA) (JMA), 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (conditionally certifying a multi-state wage and hour settlement class and granting preliminary approval to nationwide wage and hour settlement).

Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23, for settlement purposes:  "All individuals who performed work as a Consultant for The CJS Solutions Group, LLC d/b/a The HCI Group at any time from May 19, 2014 through on or about May 31, 2016."  *See* Doc. 93.  Defendants do not oppose class certification for the purposes of achieving settlement and therefore do not contest that the requirements for class certification under Federal Rule of Civil Procedure 23 have been met.  The Court finds that, based on the information presently before it, Plaintiffs meet the requirements for class certification.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are
approximately 1,800 class members, rendering joinder impracticable.  *See* Settlement Agreement
¶ 14(aa); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)
("[N]umerosity is presumed at a level of 40 members . . . .").  Rules 23(a)(2) and (3) are also
satisfied.  Plaintiffs point to three common issues of law or fact:  (1) whether the class members
were misclassified as independent contractors; (2) whether class members were entitled to
receive 150% of their regular rate for hours worked in excess of forty hours; and (3) whether
HCI's failure to pay overtime rate violated state wage and hour laws.  Settlement Mem. at 20.[5]
Therefore, the Court finds that there are common issues of law or fact among the class members
and that Named Plaintiffs' claims are typical of the class members' claims.  *See Martens v. Smith
Barney, Inc*., 181 F.R.D. 243, 258–59 (S.D.N.Y. 1998) (observing that commonality and
typicality "tend to merge into one another, so that similar considerations animate analysis")
(quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)); *see also Lizondro-Garcia v.
Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (conditionally certifying a class alleging the
same state wage and hour violations for settlement purposes); *Reyes v. Buddha-Bar NYC*, No. 08
Civ. 2494 (DCF), 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009) (granting final approval of
a class alleging state wage and hour violations for settlement purposes).

Finally, Plaintiffs satisfy Rule 23(a)(4)'s "adequacy of representation" inquiry, which
"looks both to the ability of class counsel and to the potential for conflict of interest between the
representative plaintiffs and the rest of the class."  *Martens*, 181 F.R.D. at 259.  Named
Plaintiffs' interests are not antagonistic to or at odds with those of the settlement class members.

---

[5] Plaintiffs also assert that a common question of law or fact is whether Defendant's policy violated the FLSA.  *Id.*
However, because only collective actions, not class actions, can proceed under the FLSA, the Court will not
consider that potential commonality among class members.

*See id.* ("[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.") (quoting *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 443 (S.D.N.Y. 1995)); *see also Toure v. Cent. Parking Sys. of New York*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).[6]

Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3), as common factual allegations and a common legal theory predominate over any factual or legal variations among the Class Members. *See Reyes*, 2009 WL 5841177, at *3. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient. *See id.*; *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) (finding class adjudication of state wage and hour claims appropriate even where a FLSA collective action was available). Thus, the Court finds that conditional certification of a settlement class would be appropriate.

Plaintiffs also seek conditional certification of a FLSA collective action. The Second Circuit has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). This

---

[6] The adequacy of class counsel is also not contested at this stage. The Court finds that appointment of Berger & Montague, P.C., Lichten & Liss-Riordan, P.C., and Blanchard & Walker PLLC as class counsel is likely to be warranted because counsel has performed substantial work identifying, investigating, and settling Plaintiffs' and the class members' claims. Declaration of Sarah R. Schalman-Bergen in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement (Doc. 93-3) ¶¶ 7–9. All three firms are also skilled and experienced employment class action firms with extensive experience prosecuting and settling wage and hour class and collective actions. *See id.* ¶¶ 2–4, Ex. A; Declaration of Harold Lichten in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement (Doc. 93-4) ¶¶ 2–5; Declaration of David M. Blanchard in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement (Doc. 93-4) ¶¶ 2–3; *see also Acevedo v. BrightView Landscapes, LLC*, No. 13 Civ. 2529 (MEM), 2017 WL 1062377, at *8 (M.D. Penn. Mar. 21, 2017) (approving Berger & Montague as class counsel); *Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45, 47 (D. Me. 2012) (approving Lichten & Liss-Riorden as class counsel).

process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage," and again after discovery is largely complete. *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).  At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the Plaintiffs with respect to whether a[n] FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted).  The standard for certification of a collective action is less stringent than certification of a class. *See Hadel v. Gaucho, LLC*, 15 Civ. 3706 (RLE), 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016).  As discussed above, Plaintiffs argue that they are similarly situated because they were all working as consultants for HCI between 2014 and 2017 and subject to the same payment policies. *See* Settlement Mem. at 24–25.  The Court finds that Plaintiffs are likely entitled to conditional certification as an FLSA collective action.

## IV.    Conclusion

Accordingly, Plaintiffs' request for approval of the proposed settlement is DENIED without prejudice.  The parties may proceed in one of the following ways:

1. File a revised settlement agreement on or before **February 13, 2018**; or

2. File a joint letter on or before **February 13, 2018** that indicates the parties' intention to abandon settlement and continue to trial.

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 93).  It is SO ORDERED.

Dated:    January 29, 2018
          New York, New York

                                              Edgardo Ramos, U.S.D.J.